FILED
U.S. DIST ...

2013 OCT 16  PM 2: 23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Desmond Hinds,

Plaintiff,

-against-

Police Officer Justin Jacobsen,

Defendant.

13 CV _____

**COMPLAINT**

**13 CV    7304**

Plaintiff Desmonds Hinds, by his attorney Bonita E. Zelman, as and for his Complaint alleges upon information and belief as follows:

### INTRODUCTION

1.      On October 17, 2010, plaintiff Desmond Hinds, was a 21 year old African-American and a senior attending Pace University where he played wide receiver on his college football team.  He and his best friend Danroy (DJ) Henry, Jr. and their team had played the Stonehill College football team the prior day for the homecoming game. After the game, plaintiff and his friends went to celebrate further homecoming festivities at Finnegan's Grill, a local restaurant.  Of the approximate one hundred students celebrating inside Finnegan's Grill, a dozen or less of these students were African-American and Hispanic.   It was about 1:00 AM when DJ, DJ's friend, Brandon Cox from the Stonehill team, and plaintiff, were waiting in a fire lane outside Finnegan's Grill, a local restaurant, for two other students to give them a ride home. They had all been celebrating homecoming inside with their team members and other college students.

1

When DJ was told by Mt. Pleasant Police Officer Ronald Gagnon to move their car, he moved slowly out of the fire lane. Brandon Cox was in the front right passenger seat. Desmond Hinds was sitting in the rear passenger seat. Pleasantville Police Officer Aaron Hess was on duty in the parking lot outside the Pace University homecoming celebration held at Finnegan's Restaurant. As DJ Henry drove slowly down the fire lane, officer Aaron Hess jumped in front of their vehicle with his hands in a two hand hold combat stance as he began firing into the car full of African-American students. Officer Hess continued shooting into the car from the hood of the car. Desmond heard at least three shots ring out and saw the bullet holes in the windshield. Officer Hess continued shooting into the car from the hood of the car. Plaintiff Desmond Hinds cannot ever forget DJ's last words as he was shot twice in the chest, DJ moaned: "They shot me. They shot me".

2.      Officer Hess' criminal and lawless conduct triggered contagious and violent police brutality inflicted upon other innocent, non-violent students leaving the homecoming celebration at Finnegan's Restaurant, only to see their friend DJ face down and handcuffed, bleeding to death in the street. Officer Hess' deliberate decision to shoot into a car containing innocent college students, created a heightened atmosphere, which precipitated and ignited subsequent acts of brutality by his fellow police officers. Officer Hess' shooting without justification was a substantial factor in bringing about the misconduct of other police officers who engaged in acts of brutality and violence against the plaintiff. The acts of other police officers were a natural and foreseeable consequence of the circumstances created by officer Hess in opening fire

on innocent students.  In light of common contemporary experience it was reasonably foreseeable that a police melee or a riot could erupt as a result of officer Hess' unlawful shooting.  The general risk reasonably to be anticipated from the dynamics of a police shooting by officer Hess precipitated and initiated the acts of other police in exerting and resorting to brutality against the assemblage of students leaving the restaurant. Officer Hess' shooting caused a web of interconnected acts of brutality operating together to produce manifold effects in terms of various acts of brutality which included tasering, beating, falsely arresting and maliciously prosecuting innocent students. Officer Hess set in motion the series of acts of brutality by other officers on the scene, which he knew or reasonably should have known would result from his unjustifiable aggression.  Officer Hess was responsible for the panic and chaos that followed his shooting innocent students, and that triggered a contagious, foreseeable further incidents of unlawful use and threatened use of deadly physical force by police officers at the scene.

3.     The car came to rest at the side of the road with DJ Henry slumped in the seat in a pool of blood.  Brandon Cox was shot in the left arm and two bullets had barely missed striking plaintiff.  Although DJ Henry was still alive, the police did not immediately attend to his bullet wounds and instead handcuffed him behind his back and left him bleeding to death on the pavement.  Brandon Cox was also handcuffed and deprived of immediate medical attention.  Plaintiff, Desmond Hinds, was forcibly dragged from the rear passenger seat by defendant, white Mt. Pleasant Police Officer Justin Jacobsen and slammed violently to the pavement causing him to sustain severe head trauma after which he was handcuffed behind his back.  Plaintiff turned his head

3

to defendant Jacobsen  and said: "Officer we did absolutely nothing wrong."  Defendant

Police Officer Justin Jacobsen, then pressed his gun to the back of plaintiff's head, told

plaintiff to "Shut the f- - k up", and then he slammed plaintiff's head back into the

pavement.  Plaintiff feared for his life and believed defendant Jacobsen would shoot

him too.

4.      The shooting and brutality was lawless and without basis. The

African-American young men were following police instructions to leave a fire lane,

when officer Hess jumped in front of a moving car and then he intentionally and

deliberately began shooting into a car full of students. Plaintiff and his friends, DJ Henry

and Brandon Cox in the car, were all unarmed, were not fleeing felons and presented

no threat whatsoever to anyone to warrant the deadly force inflicted upon them.

5.      While he was handcuffed behind his back and lying in the gutter, plaintiff

Desmond Hinds could see his friend DJ's body from the waist down, also in the gutter.

DJ's feet were facing down and his body was just twitching.  Plaintiff was eventually

thrown in the back seat of a marked police vehicle and left there for about 2 hours.  He

was then taken by police to the Town of Mt. Pleasant Police Department where he was

handcuffed for hours to a wall while seated on a bench.  Plaintiff kept asking every

police officer he saw about the condition of his friend DJ but they said they had no idea

although they all knew he had died.

6.      Plaintiff Desmond Hinds complained that his head hurt but was not given

any medical attention.  After hours of being handcuffed to a wall, plaintiff was taken in

custody into a back room where he was wrongfully interrogated by Detective Marco A.

4

Mendoza and Detective Martin Greenberg, of the Town of Mt. Pleasant Police Department, who did not read him his Miranda warnings. He was not released from the Town of Mt. Pleasant Police Department until approximately 8:30 AM. As he left the precinct he read an instant message on his cell phone: "Rest in peace DJ."

7.      Plaintiff was unarmed, had committed no crime or offense when he was brutally and viciously slammed into the pavement by the defendant white police officer Justin Jacobsen, who unjustifiably threatened plaintiff with the imminent use of deadly physical force by pressing his revolver to the back of plaintiff's head. Plaintiff was wrongfully detained and then interrogated and intimidated by detectives Mendoza and Greenberg.

8.      Plaintiff was falsely arrested and detained in custody without a scintilla of evidence of any wrongdoing, probable cause, justification or excuse.

9.      Plaintiff also suffered great trauma from witnessing the shooting of his good friend, DJ Henry, who was killed by officer Hess. He was also caused to suffer pain, physical and psychological injuries, as a result of defendant police officer Justin Jacobsen's unlawful threat of deadly force, use of excessive physical force, the assault and battery on him, and his false arrest and wrongful imprisonment and detention. Plaintiff also suffered severe mental anguish as a result of being illegally held in custody against his will and interrogated by detectives Mendoza and Greenberg, and the failure by all officers to obtain immediate medical care for him.

10.     This is a civil rights action seeking damages for the violations by defendant of plaintiff's rights, privileges, and immunities under the United States

5

Constitution and the Civil Rights Act of 1871, 42 U.S. C. §1983.

11.     This is a companion action to the following cases, currently pending and consolidated for discovery in the Southern District before District Judge Kenneth M. Karas and Magistrate Judge George A. Yanthis: Henry v. Hess, 11-cv-2707; Cox v. Village of Pleasantville, et al., 11-cv-6516; Garcia v. County of Westchester, et al., 11-cv-7258; Delpeche v. County of Westchester, et al., 11-cv-7260; LaRoche v. County of Westchester, et al., 11-cv-7261; Gallo v. County of Westchester, et al., 11-cv-7262; Parker v. County of Westchester, et al., 11-cv-7264; Hinds v. County of Westchester, et al., 11-cv-7265; Romanick v. County of Westchester, et al., 11-cv-7267; Henry v. Town of Mt. Pleasant, et al., 12-cv-7556.

## PARTIES

12.     On October 17, 2010 plaintiff Desmond Hinds was 21 year old African-American college student who resided in Stamford, Connecticut.

13.     Town of Mt. Pleasant, New York, is a  municipality within the County of Westchester, State of New York, which at all relevant times, employed defendant Town of Mt. Pleasant Police Officer Justin Jacobsen who was at the scene of the shooting and who committed and/or participated in the wrongful acts alleged herein and/or acted in concert with the other police officers and/or did nothing to prevent illegal acts of police officers on the scene. At all relevant times, Town of Mt. Pleasant, New York, employed defendant Justin Jacobsen as a police officer.

14.     At all relevant times herein, Louis Alagno, was the Mt. Pleasant Police Chief, acting in said capacity as the Town of Mt. Pleasant's agent, servant, and/or

employee, and within the scope of his employment as such.

15.     Defendant Justin Jacobsen is a white police officer, who, at all relevant times, was employed as a police officer for the Town of Mt. Pleasant, New York.   At all times relevant hereto, defendant Jacobsen was acting under color of state law in his capacity as the Town of Mt. Pleasant's agent, servant, and/or employee, and within the scope of his employment as such.

16.     Defendant Jacobsen is being sued herein in his personal-capacity as a government officer for actions taken under color of state law which caused the deprivation of plaintiff's federal rights.

17.     Defendant Jacobsen is being sued herein in his official capacity for acts performed pursuant to a municipal policy, custom, or practice which permitted its police officers to use or threaten to use  excessive, unjustifiable, deadly physical force as well as for the municipality's failure to train its police officers as to the laws of justification and use of force so as to display a deliberate indifference to the constitutional rights of those within its jurisdiction. The municipal policies, customs, and/or practices included discriminatory, unjustifiable use of physical force, deadly force, and/or the threatened use of such force, failure to properly supervise and discipline officer misconduct thereby sending a message to its police force that such wrongful acts would be condoned, ratified, and tolerated.

## JURISDICTION AND VENUE

18.     This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§1983 and 1988.

19.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§1331, 1343(a)(3) and (4), 1367(a), and the doctrine of pendent jurisdiction. This Court also has diversity jurisdiction pursuant to 28 U.S.C. §1332 because plaintiff Desmond Hinds resides in Connecticut, and, upon information and belief, defendant Jacobsen resides in New York, and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

20.     The acts complained of occurred in the Southern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. §1391(b).

## JURY DEMAND

21.     Plaintiff demands trial by jury in this action.

## FACTUAL ALLEGATIONS

22.     At approximately 1:00 A.M. on October 17, 2010, DJ Henry and Brandon Cox left Finnegan's Grill, and DJ Henry pulled his car into the fire lane near the restaurant. Plaintiff, Desmond Hinds, got into the rear seat of DJ Henry's car and they then waited for two other friends to come out.

23.     While the young men were waiting, officer Gagnon knocked on the driver's side window, gesturing for DJ Henry, the driver, to move out of the fire lane. DJ Henry immediately complied with Officer Gagnon's direction.

24.     As DJ Henry drove away slowly, officer Hess jumped in front of their moving vehicle with his gun drawn in a two hand combat stance pointing his gun at their car windshield and immediately began shooting into their car.

25.     Officer Aaron Hess fired additional shots from the hood of the vehicle. He

8

shot DJ Henry twice in the chest, shot Brandon Cox in the arm, and two of his bullets narrowly missed shooting plaintiff Desmond Hinds.

26.     Officer Hess had no reasonable basis to stop or seize or jump in front of the moving vehicle. Plaintiff Desmond Hinds was unarmed, had committed no crime or offense when he and his friends in the car were brutally and viciously attacked by officer Hess and the other white police officers who either joined or failed to stop the criminal and unlawful actions of officer Hess. No exigency caused police officer Hess to stop or shoot at DJ Henry's vehicle which was full of unarmed college students.

27.     Officer Hess, immediately after the shooting can be observed in a seated position communicating with other uniformed police officers not exhibiting observable signs of excruciating pain.

28.     Plaintiff Desmond Hinds was unjustifiably assaulted and battered and falsely arrested, wrongfully imprisoned, and held in custody against his will by defendant Police Officer Jacobsen and other police officers without a scintilla of evidence of any wrongdoing, probable cause, justification or excuse.

29.     Standard police policy and protocol prohibits police from firing their weapons at the occupants of moving vehicles for the obvious safety of the innocent public.

30.     Plaintiff Desmond Hinds was terrified when seated in the rear seat of DJ Henry's car when two of officer Hess' bullets lodged in the back seat on both sides of him barely missing wounding him.

31.     Plaintiff Desmond Hinds believes that officer Hess intended to kill him and

9

the other students in the vehicle by aiming and firing his weapon directly at the students in the car.

32.     Plaintiff Desmond Hinds also suffered great trauma from witnessing both the murder of his best friend, DJ Henry, who was killed by officer Hess, as well as the shooting of Brandon Cox and the brutality committed on himself.

33.     After the shooting, the defendant police officer Justin Jacobsen failed to obtain prompt medical attention for DJ Henry, who had been shot twice in the chest, or for Brandon Cox or for plaintiff, even though they suffered serious medical conditions.

34.     Defendant police officer Justin Jacobsen forcibly dragged plaintiff from the rear seat of the vehicle and then slammed him violently to the pavement causing him to sustain severe head trauma.  Said defendant Jacobsen, handcuffed plaintiff behind his back.  When plaintiff turned his head toward defendant officer Justin Jacobsen  and said: "Officer we did absolutely nothing wrong" the officer said "Shut the  f - - k up" as he pressed his gun at the back of Desmond Hinds' head. Defendant police officer Justin Jacobsen then slammed plaintiff's head back into the pavement.  He then left the terrorized handcuffed plaintiff, lying in the street, not knowing the fate of his friend DJ Henry.  Plaintiff could see DJ Henry's body lying face down in the street and his body twitching.

35.     Eventually, plaintiff was dragged to his feet and thrown into the rear seat of a police vehicle where he was left for hours without being provided prompt medical attention for his head injuries.

36.     Plaintiff was falsely arrested and detained in custody without a scintilla of

evidence of any wrongdoing, probable cause, justification or excuse.

37.     Defendant Justin Jacobsen not only exercised threats of deadly physical force against and used excessive physical force against plaintiff Desmond Hinds, but, upon information and belief, also witnessed the criminal events and actions of officer Hess and the other assaulting officers on the scene, and failed and refused to intervene, though he had the obligation and opportunity to do so.

38.     As a result of defendant's denial of medical care to plaintiff, he sustained pain and suffering from the head trauma and concussion.

39.     Plaintiff was kept handcuffed and in custody from approximately 1:20 A.M. until approximately 8:30 AM on October 17, 2010 when he was finally released by the Town of Mt. Pleasant police department.

40.     Ultimately, plaintiff was not even charged with a single crime after his false arrest, detention and wrongful interrogation.

41.     The excessive use of brutal force on plaintiff, the assault and battery, the threatened imminent use of deadly physical force by defendant Jacobsen placing a loaded gun to the back of plaintiff's head, the false arrest, and the restraint and detention lacked any lawful basis and probable cause, and wrongful detention and interrogation, were done maliciously, falsely, and in bad faith. The denial of immediate medical care lacked lawful basis and was done maliciously, and in bad faith. Defendant Police Officer Justin Jacobsen acted with discriminatory intent with wanton and reckless disregard for the rights and safety of plaintiff.

42.     As a result of defendant's conduct described above, including the use of

excessive force, the violent assault, the threats of imminent use of deadly physical force by placing a loaded gun to the back of plaintiff's head, restraining, falsely arresting and denying medical care to plaintiff, plaintiff suffered serious physical and psychological injury, pain and suffering, concussion, shock, trauma, fear of impending death, loss of enjoyment of life, post traumatic stress disorder, emotional injury, mental anguish, humiliation and embarrassment, reputational injury, medical costs, loss of potential earning capacity because of loss of football career, and other losses.

## FIRST CAUSE OF ACTION
### (42 U.S.C. §1983)

43.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

44.    By the above, and by threatening plaintiff with deadly physical force, arresting plaintiff without probable cause, using excessive force against him, assaulting and battering him, unreasonably seizing him, denying him immediate medical care, the defendant Police Officer Justin Jacobsen deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §1983, including, but not limited to, rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

45.    Defendant Jacobsen is being sued herein in his personal-capacity as a government officer for actions taken under color of state law which caused the deprivation of plaintiff's federal rights.

46.    Defendant Jacobsen is being sued herein in his official capacity for acts performed pursuant to a municipal policy, custom, or practice which permitted its police

officers to use or threaten to use excessive, unjustifiable, deadly physical force as well as for the municipality's failure to train its police officers as to the laws of justification and use of force so as to display a deliberate indifference to the constitutional rights of those within its jurisdiction. The municipal policies, customs, and/or practices included discriminatory, unjustifiable use of physical force, deadly force, and/or the threatened use of such force, and failure to properly supervise and discipline officer misconduct thereby sending a message to its police force that such wrongful acts would be condoned, ratified, and tolerated.

47.     Defendant Jacobsen acted under pretense and color of state law and in his individual and official capacities and/or within the scope of his respective employment with Town of Mt. Pleasant, New York.  Said acts by the defendant were beyond the scope of his jurisdiction, without authority of law, and in abuse of his powers, and said defendant officer acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by 42 U.S.C. §1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

48.     As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff suffered confinement, serious physical and psychological injury, pain and suffering, concussion, shock, trauma, fear of impending death, loss of enjoyment of life, post traumatic stress disorder, emotional injury, mental anguish, humiliation and embarrassment, reputational injury, medical costs, loss of potential earning capacity because of loss of football career, and other losses.

### SECOND CAUSE OF ACTION
(42 U.S.C. §1983 - Violations of the Equal Protection Clause)

49.    Plaintiff repeats, reiterates and realleges each and every allegation contained in preceding paragraphs as if set forth at length herein.

50.    Plaintiff Desmond Hinds is a member of a minority class, statutorily protected.

51.    Acting under color of state law, defendant Jacobsen, in his individual and official capacity, has applied his arrest power in a disparate manner with discriminatory intent, used unlawful excessive force, lacked probable cause to arrest plaintiff, and then used the false arrest of plaintiff to cover up his misconduct against plaintiff, an African-American male and similarly situated individuals in an intentionally discriminatory and race-based manner.

52.    Defendant has acquiesced in, ratified and failed to check widespread violations of the constitutional rights of citizens, including plaintiff to be free from excessive force and unreasonable search and seizure because of his race.

53.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff suffered confinement, serious physical and psychological injury, pain and suffering, concussion, shock, trauma, fear of impending death, loss of enjoyment of life, post traumatic stress disorder, emotional injury, mental anguish, humiliation and embarrassment, reputational injury, medical costs, loss of potential earning capacity because of loss of football career, and other losses.

### THIRD CAUSE OF ACTION
(42 U.S.C. §1983 - Failure to Intercede)

54.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

55.     By his conduct and under color of law defendant police officer Justin Jacobsen, had opportunities to intercede on behalf of plaintiff to prevent the use of excessive force and unreasonable seizure but, due to his intentional conduct or deliberate indifference, declined or refused to do so.  Moreover, defendant's actions also contributed to the deprivation of plaintiff's rights suffered on October 17, 2010 and the other incidents as previously alleged herein.

56.     By reason of the above, plaintiff has suffered confinement, serious physical and psychological injury, pain and suffering, concussion, shock, trauma, fear of impending death, loss of enjoyment of life, post traumatic stress disorder, emotional injury, mental anguish, humiliation and embarrassment, reputational injury, medical costs, loss of potential earning capacity because of loss of football career, and other losses.

### FOURTH CAUSE OF ACTION
(42 U.S.C. §1983 - Conspiracy)

57.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

58.     On October 17, 2010 and thereafter defendant, under color of law, conspired to deprive plaintiff of his constitutional rights, including the rights to be free from the intentional use of unreasonable force, to be free from unreasonable search and seizure, to associate and speak freely, to have access to seek redress in the courts and to be free from false arrest, false imprisonment, the delay and denial of medical

15

attention.

59.     As part of the conspiracy, defendant physically assaulted and battered plaintiff at the scene.

60.     In furtherance of the conspiracy and in order to cover up the acts of brutality, defendant engaged in the following:

(a.)     Falsely arresting and imprisoning plaintiff;

(b.)     Fabricating and contriving criminal charges against plaintiff;

(c.)     Although he was aware of the brutality and was required to report it immediately, he deliberately suppressed the truth;

(d.)     Submitted false police reports, statements and sworn testimony to support and corroborate the assault and battery and false arrest of plaintiff to insulate his wrongful conduct from administrative and criminal proceedings and sanctions;

(e.)     Failed to submit true and accurate police documents and reports and failed to cooperate with law enforcement officials investigating the wrongs committed upon plaintiff

61.     By reason of the foregoing, the plaintiff has suffered confinement, serious physical and psychological injury, pain and suffering, concussion, shock, trauma, fear of impending death, loss of enjoyment of life, post traumatic stress disorder, emotional injury, mental anguish, humiliation and embarrassment, reputational injury, medical costs, loss of potential earning capacity because of loss of football career, and other losses.

## FIFTH CAUSE OF ACTION
### (42 U.S.C. §1985(3) - Conspiracy to Hinder Equal Protection)

62.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

63.    On or about October 17, 2010 and thereafter, defendant Jacobsen conspired with other officers on and off the scene for the purpose of hindering and preventing the authorities of the State of New York from securing and providing plaintiff equal protection of the laws.

64.    Among the actions taken in furtherance were false statements made to commanding officers, superior officers, investigating bodies, and the abdication of the officer's legal duty to report incriminating evidence to proper authorities. Moreover, defendant's actions also contributed to the deprivation of plaintiff's rights suffered on October 17, 2010 and the other incidents as previously alleged, at the hands of defendant.

65.    By reason of the foregoing, the plaintiff has suffered confinement, serious physical and psychological injury, pain and suffering, concussion, shock, trauma, fear of impending death, loss of enjoyment of life, post traumatic stress disorder, emotional injury, mental anguish, humiliation and embarrassment, reputational injury, medical costs, loss of potential earning capacity because of loss of football career, and other losses.

## SIXTH CAUSE OF ACTION
### (42 U.S.C. §1985(3) - Conspiracy to Impede Due Course of Justice)

66.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

17

67. The defendant conspired to impede the due course of justice in New York State, with the intent of denying plaintiff the equal protection of the laws.

68. By reason of the foregoing, the plaintiff has suffered confinement, serious physical and psychological injury, pain and suffering, concussion, shock, trauma, fear of impending death, loss of enjoyment of life, post traumatic stress disorder, emotional injury, mental anguish, humiliation and embarrassment, reputational injury, medical costs, loss of potential earning capacity because of loss of football career, and other losses.

## SEVENTH CAUSE OF ACTION
### (42 U.S.C. §1986 - Action for Neglect to Prevent)

69. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

70. Upon information and belief, the defendant had knowledge that a 42 U.S.C. §1985(3) conspiracy was in progress, had the power to prevent or aid in preventing the conspiracy from continuing, but neglected or refused to do so.

71. Defendant could have, with reasonable diligence, promptly reported the brutality to superiors and to duly authorized investigators. His failure contributed to plaintiff's suffering an assault and battery, false arrest, false imprisonment and other wrongs, thereby exacerbating his pain and suffering.

72. Had the defendant complied with the law and furnished truthful information to the authorities investigating the brutality the plaintiff sustained on October 17, 2010, and the further and other violations plaintiff sustained thereafter, the §1985(3) conspiracy and §1983 violations would not have succeeded to the extent that it did and continues.

18

73.     By reason of the foregoing, the plaintiff has suffered confinement, serious

physical and psychological injury, pain and suffering, concussion, shock, trauma, fear of

impending death, loss of enjoyment of life, post traumatic stress disorder, emotional

injury, mental anguish, humiliation and embarrassment, reputational injury, medical

costs, loss of potential earning capacity because of loss of football career, and other

losses.

## EIGHTH CAUSE OF ACTION
### (New York Constitution Art. I, § 11)

74.     Plaintiff repeats and realleges the foregoing paragraphs as if the same

were fully set forth at length herein.

75.     By the aforesaid acts, defendant has violated plaintiff's right to the equal

protection laws under Article I, §11 of the New York State Constitution, thereby giving

rise to cause of action pursuant to that Article.

76.     The conduct and actions of the defendant Jacobsen, acting under color of

law, in falsely arresting, detaining, imprisoning, assaulting, battering and conspiring

against plaintiff, was done with discriminatory intent based on plaintiff's race and as

such was disparate treatment of a member of a minority class statutorily protected. Said

actions were malicious and/or committed with a reckless disregard for the natural

probable consequences of his acts, was done without lawful justification, and was

designed to and did cause specific and serious bodily, mental and emotional harm, pain

and suffering in violation of the plaintiff's Constitutional rights as guaranteed under law

and Constitution of the State of New York. The above described actions and omissions

engaged in under color of state law by the defendant, within the meaning of Article

I,§11, deprived the plaintiff of rights, including but not limited to, his rights under Article I, §§8, 9 guaranteeing freedom of expression and association, Article I,§12 guaranteeing protection against unlawful seizure of his person, Article I, §11 guaranteeing due process and equal protection under the law.

77.    By reason of the Constitutional violations by defendant, plaintiff has been damaged as set forth above.

**WHEREFORE**, plaintiff respectfully requests judgment against defendant as follows:

(A)    an order declaring that defendant's conduct violated plaintiff's rights as guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution;

(B)    an order granting compensatory damages in an amount to be determined at trial;

(C)    an order awarding punitive damages against defendant Jacobsen;

(D)    an order awarding plaintiff reasonable attorneys' fees and costs under 42 U.S.C. §1988; and

(E)    an order awarding such other and further relief as the Court may deem just and proper, together with attorneys' fees, interest, costs and disbursements of this action.